OTIS ELEVATOR CO. v. PORTLAND CO.

(Circuit Court, D. Maine. January 14, 1903.)

No. 526.

1. PATENTS—INFRINGEMENT—ELEVATOR CONTROLLING MECHANISM.

In the Bassett patent, No. 453,955, for an elevator controlling mechanism, claims 1 and 2 cannot be given a broad construction as embodying a generic invention, since, in that case, if not anticipated, they would cover the device of the prior patent, No. 359,551, to the same patentee, and would be void for double patenting, and the invention of the later patent must be restricted substantially to the specific combination shown in claims 3 and 4. As so construed, claims 1 and 2 *held* not infringed.

In Equity. Suit for infringement of letters patent No. 453,955 for an elevator controlling mechanism, granted to Norman C. Bassett June 9, 1891. On final hearing.

Edwin H. Brown, for complainant.
Payson & Virgin, for defendant.

HALE, District Judge. This bill in equity is brought for infringement of United States patent No. 453,955, dated June 9, 1891, for an improvement in elevator control mechanism invented by Norman C. Bassett. It is claimed that the infringement by the defendant is upon the first and second claims of the patent, so that only those claims are in issue. They are as follows:

"(1) A device for operating the stopping and starting mechanism of an elevator, consisting of two cables or cable-sections hanging in the well, adjacent to the path of the cage, from fixed supports at the upper ends, and both connected with the stopping and starting mechanism, and a single cable-operating device carried by the cage and arranged to bear upon both cables or cable-sections to tighten or slacken the same alternately to shift said mechanism to its different positions, substantially as set forth.

"(2) In controlling devices for elevators, the combination of a car, two fixed or standing cable-sections, each connected with a fixed support at one end and at the other with the starting and stopping mechanism, a cable-operating device on the car bearing on both cables and over which said cables pass, and means for moving said device to alternately take up and pay out the cables to shift the operating mechanism, substantially as described."

It is contended by the complainant that the inventor, Bassett, was the first to produce an elevator mechanism characterized by a single cable-operating handle arranged in operative connection with two cables or cable-sections at all times, and that he thus made a primary, generic invention. It is contended, further, that the Bassett patent should have the broad construction of a primary patent, and that under such construction of claims 1 and 2 the defendant's mechanism is an infringement. It is further insisted by the complainant that a distinctive feature of this patent is that it enables the operator in the cage or elevator, by a single hand device within the cage, to simultaneously tighten one cable and relax the other, and that this simultaneous control of both cables is new, and the proper subject of a primary patent; and, further, that while in the two claims at issue the element of simultaneity is not, in terms, expressed, still by a reference to the specification and the drawings, and also to the history of the prior art, it is evident that the patentee intended to claim this element as an important and leading one in his patent. This contention is put succinctly by the complainant's expert that "the claims are broadly for any device combined with the standing cable whereby one is positively paid out when the other is taken up." It is contended, on the other hand, by the defendant, that the two claims in suit should not receive the broad construction claimed by the complainant; that all the novelty in his patent was in the forms and the combination as constructed and put together; that such combination was of old elements, previously found in various forms and in different patents, and that anybody else has an equal right to again reshape and rearrange those old elements into another and

119 F.—59

different combination; that, if the two claims are given the limited construction urged by the defendant, there has been no infringement by the defendant; that the real inventive force of the patent is found in the third and fourth claims, which are for a new combination of old elements, and that the first and second claims of the patent were put in merely as large dragnet claims, with the general view of attempting to get the benefit of other and different elevator mechanisms. 'The specific defenses made by the defendant are that the two claims in suit, if given the broad significance contended for by the complainant, were anticipated by several old patents; that all the elements set forth in those claims lacked novelty when taken separately, and it is only by the combination of such elements as are set forth in claims 3 and 4 that novelty can be found in the patent; that, in view of the prior art, Bassett's invention, if given the broad construction urged by the complainant, constituted only an aggregation, and not an invention; that the complainant's patent is invalid in view of an earlier patent of Bassett for the same invention, or that, if the patent in suit can be given any validity, it must, in view of the earlier patent, be given a limited construction, and be confined to claims 3 and 4; and that, if given this construction, the defendant's controllers are not in any way an infringement of the patent in suit. The defense is further made by the defendant that the patent in suit expired September 26, 1902, by reason of the expiring at that date of a British patent for the same invention, recited in the Bassett specification; so that, even if the patent in suit were valid, and had been infringed, there could be no decree for an injunction.

When we examine the history of the prior art, we find that the Otis patent, No. 131,896, dated October 1, 1872, shows two suspended cables fixed at the top, the same as in the Bassett patent; also means of tightening the cables by devices controlled by a duplicate hand device, and a further means of tightening these cables by a spiral. The single-hand device does not appear in the Otis patent. The history of the prior art shows also the Whitlock patent, No. 158,613, dated January 12, 1875. This patent shows the standing cables and the single hand controller with any "stopping and starting" mechanism. The hand controller seems to be in principle the same device as that claimed in the patent in suit. In the operation of the machine invented by Whitlock there is alternate action of the hand controller upon the cables, but no perfect simultaneous action upon the cables, as is claimed for the machine of the patent in suit, and as is found in a cruder form in the Otis patent. The Whitlock and the Otis patents do not appear to have ever been put in actual use, but it is urged by the defendant that they show all the elements that are in the Bassett patent; that the Otis patent shows all these elements except the hand controller, and that the Whitlock patent has all these elements, including the hand controller. The Reynolds patent, No. 317,202, shows running or traveling cables with a single device on the car. It is contended by the complainant that the force of the argument in regard to anticipation of the Reynolds patent is broken by the fact that, although his letters patent are previous to the date of the letters patent in suit, still the invention of the letters

patent in suit was in 1884, previous to the Reynolds patent, so that the invention of Bassett antedates the invention of Reynolds. Upon this point—namely, that the invention in the patent in suit was made in June, 1884—we find the patent of Baldwin, No. 390,053, dated September 25, 1888; the patent of Prince, No. 335,239, dated February 2, 1886; the patent of Perkins, No. 349,175, dated September 14, 1886; the patent of Stokes, No. 469,984, dated March 1, 1892. These patents of Baldwin, Prince, Perkins, and Stokes are all prima facie anticipations of the patent in suit, and it is substantially admitted that they are such anticipations, unless the invention of Bassett can be carried back to June, 1884. A serious question of fact is raised by this contention of the defendant as to whether the complainant has offered evidence sufficient to prove satisfactorily that Bassett's invention was actually made in the broad form contended for by him in June, 1884. The history of the art also shows further the old single cable elevator control mechanism in use for many years, and modified by the Hanford patent, No. 134,273, dated December 24, 1872. The history of the art shows also a patent by Bassett himself, applied for June 22, 1885,—No. 359,551. This patent is referred to by Bassett in the specifications of the patent in suit as follows:

"I am aware of the construction shown in my letters patent No. 359,551, in which there is shown an operating device in which two double grooved wheels are employed, the same being one species under the invention herein claimed, and differing practically from the construction herein shown in the liability of the cables to slip on one or other of the double grooved pulleys, thereby causing a wear that is avoided when each pulley can turn independently."

It is urged by the defendant that the patent in suit is invalid in view of this earlier patent, No. 359,551; that, if the invention of the patent in suit is given the broad construction claimed for it, it is clearly covered by the invention of patent No. 359,551, and is made void by it, under the authority of Miller v. Eagle Mfg. Co., 151 U. S., page 199, 14 Sup. Ct. 310, 38 L. Ed. 121. It is claimed by the complainant that Bassett first invented his broad patent in June, 1884, and that this patent included the use of four stationary pulleys in controlling the two cables; that afterwards he invented the double pulley of patent No. 359,551, and applied for a patent upon same; that he then found that this double pulley was liable to cause a slipping of the cable, and he therefore applied for the use of the four pulleys in the patent in suit. If the patent in suit is given a limited construction, and is confined substantially to claims 3 and 4, it does not include the invention in patent No. 359,551; but, if claims 1 and 2 are given the broad construction claimed by the complainant, it is urged that this would clearly include the invention shown in No. 359,551, and hence would come under the law of double patenting, and, under the doctrine of Miller v. Eagle Mfg. Co., would be invalid.

It is now necessary to inquire what breadth should be given to the claims for the Bassett patent in suit, to see whether or not, under the test applied by the court in Machine Co. v. Lancaster, 129 U. S. 273, 9 Sup. Ct. 299, 32 L. Ed. 715, this patent can be held to be an invention of a primary character, and whether the mechanical

functions performed by the invention can be held to be entirely new. It is necessary to examine the history of Bassett's invention, to follow the path which the mind of the inventor took in reaching the result achieved by this patent. Some time before March, 1885, Bassett made the invention contained in patent No. 359,551. The claims of that patent are as follows:

"In an elevator, a cage, a valve device, two freely turning sheaves or pulleys carried by the cage, a lever on the cage connected to vibrate the bearings of said pulleys, and two suspended. ropes secured to fixed supports, passing in opposite directions around said pulleys, and connected to the valve device, substantially as described.

"(2) The combination with an elevator engine, a cage connected to be operated thereby, and valve devices, of two suspended ropes secured to fixed supports, a lever carried by the cage, and supporting double grooved pulleys outside the latter and adjustable from within the same, the said ropes being passed around the pulleys in opposite directions, and each connected at its end to a part of the valve-operating device, substantially as set forth.

"(3) The combination of the cage of a hydraulic elevator, a shaft extending through the side of the same and carrying levers at its opposite ends, sheaves carried by the arms of the external lever, a pulley near the bottom of the well, a rope fixed at the upper end passing around the sheaves and around the pulley within the well to the valve-operating appliances, and a second rope fixed at one end passing around the same sheaves and to the valve-operating appliances, substantially as set forth.

"(4) The combination of two suspended ropes secured to fixed supports connected to the operating valve of a hydraulic elevator, an adjustable lever supported by the cage, and two sheaves carried upon the lever, around both of which sheaves both the said ropes are passed, substantially as specified.

"(5) The combination, in an elevator, of a lever pivoted to the car, and having arms projecting therefrom, pulleys or sheaves carried by the arms, and two cables suspended at their upper ends from fixed supports, and passing round both of said sheaves to devices connected to the engine valve, substantially as described."

It will be seen that in claim 2 his description is of a "lever carried by the cage and supporting double grooved pulleys outside the latter, adjustable from within the same, the said ropes being passed around the pulleys in opposite directions, and each connected at its end to a part of the valve-operating device." The history of the art appears clearly to show that the specific structure described by these claims was novel. These claims do not indicate that the inventor then claimed that he was anything more than an improver upon a prior machine, which was capable of accomplishing the same general result; in which case his claims would not receive a broad interpretation. This patent is pronounced by the complainant's expert as commercially impracticable. That expert testified that the use of double grooved pulleys is impracticable commercially.

The figures of the patent in suit, namely, Figs. 1 and 2, which set out the only machine the defendant can be held in any way to infringe, are not made a part of this patent No. 359,551. Bassett further produced another specific patent in 1891, of which he says he made a sketch in June, 1884, and that patent is No. 456,463. He says he made some exhibition of this, and thought it inferior to No. 359,551. This contains the identical drawings of Figs. 3, 4, and 5 of the patent in suit. The claims of this patent No. 456,463 are as follows:

"The combination of the two cable-sections hanging in a well and connected to fixed supports and with the stopping and starting mechanism of an elevating engine, a cage provided with a single hand device, guide pulleys carried by the cage, and shifting pulleys connected to be shifted by the hand device, the cable-sections passing around the guide pulleys and shifting pulleys, and all arranged to draw upon one cable-section and relax the other by a single movement of the hand device, substantially as set forth.

"(2) The combination of a cable having two sections suspended within a well from fixed points and connected to operate the stopping and starting mechanism, a hand device, and two pairs of guide-pulleys carried by the cage, and a lever or arm carrying two pulleys and connected with the hand device within the cage, each cable-section passing over one pair of guide pulleys and around one of the pulleys carried by said lever, substantially as described.

"(3) The combination, with the cage and stopping and starting device, of two standing cable-sections suspended in the well, an operating device upon the cage bearing upon both cable-sections, and a lever connected with the cable-sections and the stopping and starting device, substantially as set forth."

In this patent the four separate pulleys on the lever of the patent in suit are not found. The four stationary guide pulleys on the car and only two moving pulleys on a vertical lever do not in any way point to a machine having no stationary guide pulleys and four moving pulleys. There is not evidence sufficient to lead the court to the conclusion that Bassett ever, before the fall of 1886, made any invention or any other structures than those described in the two patents above referred to, No. 359,551 and No. 456,463. Now, the machine described in claim 4 of the patent in suit is shown in the device in Figs. 1 and 2. Nowhere in the above two patents is there any description which conforms to those two depicted devices, or to claim 4 of the patent in suit. It does not appear that there were ever complete drawings, like Figs. 1 and 2, until the winter of 1886 and 1887. The patent solicitor and expert appears to have received the exhibit drawing for the patent in suit in September, 1886, which drawing shows no structure like Figs. 1 and 2, but does show Figs. 3, 4, and 5. These latter figures have never been embodied or used. Nothing valuable has ever been produced, except that described in the clear, specific device of Figs. 1 and 2.

The patents of Baldwin, Prince, Perkins, and Stokes are admitted to be anticipatory of the broad claims of the Bassett patent, unless they are prevented from such anticipation by the fact that Bassett's patent should date from the alleged time of his invention in June, 1884, instead of from the time of his application in October, 1886. The burden is upon the complainant to prove that his invention should date from the earlier date. Bassett seeks to overcome the presumption against him by his own testimony that Figs. 3, 4, and 5 of his patent were sketched by him in June, 1884, and disclosed to Reynolds in August, 1884; that immediately after, he made additional sketches like Fig. 1 of the patent in suit. There is no evidence, beyond this statement of Bassett, that immediately afterwards he made sketches like Fig. 1, except what Reynolds testifies; but Bassett disclosed Figs. 3, 4, and 5 to five persons, and does not claim that he so disclosed Fig. 1. He says that all his sketches were

abstracted from his desk in November, 1884; that in November he reproduced sketches of 3, 4, and 5, but not Figs. 1 and 2, because he then thought that patent No. 359,551 was the most commercial, and because from the drawing in that patent he could explain Figs. 1 and 2 by simply imagining the two double grooved pulleys to be split into four single pulleys; and he thought that a separate drawing was not required to illustrate the difference. He does not undertake to say that he made further drawings of Figs. 1 and 2 until the winter of 1886 and 1887. Reynolds cannot be said to have sufficiently corroborated Bassett as to his drawings of Fig. 1, nor is there any sufficient corroboration. We do not find enough testimony in the case to overcome the presumption against the complainant on this point, and to carry the invention back to June, 1884. If the invention is not so carried back to June, 1884, the patents of Baldwin, Prince, Perkins, and Stokes are clearly and admittedly anticipations of the Bassett claims 1 and 2 in suit.

We come now to the claims of the patent in suit. Claims 1 and 2 are already quoted above. The other claims, 3 and 4, are as follows:

"(3) The combination of a cage, a cable having two suspended sections, a shifting-bar connected with both parts of said cable-sections at the bottom of the well, and a cable-operating device carried by the cage bearing on both cable-sections, and provided with a single hand device within the cage, substantially as described.

"(4) The combination with the two cable-sections suspended within the well, and with a stopping and starting mechanism connected with said cable-sections, of a cage, a single hand device carried thereby, and a cable-operating device connected with the said hand device, and consisting of a lever carrying grooved pulleys at the opposite ends, each cable-section passing below one pulley and over the pulley at the opposite end of the lever, substantially as set forth."

Claim 4 has already been referred to. It covers the device described in Figs. 1 and 2. Claim 3 shows a shifting bar connected with both parts of the cable sections, as shown in the drawing and in the structure. These claims are clearly for specific apparatus. In claims 1 and 2 what does "tighten or slacken the same alternately" mean? The learned counsel for complainant suggests that it means, when taken in connection with the history of the art and with the drawings in the case and the models, that when one handle is moved in either direction it will take up one cable and pay out the other to the same extent only, thereby utilizing the latter as a hold-back. In other words, that "alternately" must have practically the meaning of "simultaneously." Undoubtedly, the machine may be operated so as to make simultaneity a very important element, but we do not find that there is anything in the patent in suit to show that simultaneity of action of the cables was intended to be a part of the invention. The claim calls for "means for moving said device, to alternately operate the cables," but not necessarily to do this simultaneously. It is urged with some force by counsel for the defendants that there is just as much reason for reading into claims 1 and 2 a requirement that the fixed supports of the cables should allow of no "give," or that the moving pulleys should swing through arcs of circles, as for reading into them the requirement that the

movement of one cable should always be accompanied by the movement of its mate. It is perfectly true that no one of these three limitations is made in the patent, even when that patent is construed in the light of the history of the art, of the drawings, and of the models. To interject "simultaneity" into the patent as a necessary element would be to make interpretation take the place of invention. If this simultaneous element is not interpreted into the patent, it seems clear that there has been anticipation to some degree by Otis, and substantially by Whitlock. It is to be remembered that the patent in suit was applied for in October, 1886, after patent No. 359,551. The element of looping and simultaneity of action are as true of No. 359,551 as of Figs. 1 and 2 of the patent in suit. About the only difference between the functional action of the two patents is found in the fact of the latter patent, namely, the patent in suit, cutting the two pulleys, and making four of them. This is not the case, often shown under the patent law, of the inventor of a broad novelty, capable of various specific embodiments, applying for a broad patent, and afterwards applying for patents on specific forms.

It is well urged by the defendant that, if the element of looping cables simultaneously affected by the hand device is to be interpreted into the patent in suit, it should be so interpreted also into No. 359,551. In other words, if simultaneity is allowed to inhere in the patent in suit, and so enable the court to differentiate this patent from the Whitlock patent, then it must be found that this same element of simultaneity, being found in No. 359,551, as well as in the patent in suit, makes a case of double patenting, under the doctrine of Miller v. Eagle Mfg. Co. It cannot be that courts can hold that merely splitting two double grooved pulleys into four single grooved pulleys is such a change as to constitute invention, much less to allow the court to interpret the patent in suit into a broad, generic patent. From an examination of the forms of the defendant's controllers, as shown by the record, it seems clear that, if claims 1 and 2 include these controllers, they are also broad enough to include the invention of Whitlock; and that thus Whitlock's patent must be held to be anticipatory of the broad claims 1 and 2 of the patent in suit. Claims 3 and 4 constitute a working species patent, and do not cover the invention of the earlier patent, No. 359,551. They are a separate invention from this earlier patent, substantially different from and independent of it. They are the taking of old elements, and combining them in a new and useful way, as in Dowagiac Mfg. Co. v. Minnesota Moline Plow Co. (C. C. A.) 118 Fed. 136.

In Miller v. Eagle Mfg. Co. the court says:

"No patent can issue for an invention actually covered by former patents, especially to the same patentee, although the terms of the claims may differ. The second patent, although containing the broader claim, more generical in its character than the specific claims contained in the prior patent, is also void. But where the second patent covers matter described in the prior patent essentially distinct and separable from the invention covered thereby and claims made thereunder, its validity may be sustained."

The court further says in that case:

"It must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent, not covered by the first patent."

Now, claims 3 and 4 of the patent in suit may well be held to be a separate invention, distinctly different from and independent of the claims of the earlier patent, No. 359,551. The claims of the earlier patent are for combinations, and the leading novelty in those combinations is the double grooved pulley. All the combinations of that patent are different from the combinations of claims 3 and 4 of the patent in suit; but if you give the first two claims the broad construction contended for by the complainant, then the invention in No. 359,551 is covered by those two claims of the patent in suit.

With this more limited construction of claims 1 and 2 of the Bassett patent, giving the complainant the benefit of all that is new in its combinations, and not giving him the benefit of his grouping of old elements with old combinations, we are able to escape the charge of double patenting with reference to patent No. 359,551, and to give full effect to claims 3 and 4 in his patent. With this construction of the patent in suit, we do not think the defendant's apparatus is an infringement of the Bassett patent in suit. The drawings of defendant's machine show a different combination from those of the Bassett patent in suit. Bassett had three forms of hand controller: First, that of patent No. 359,551; second, that of Figs. 3, 4, and 5 of the patent in suit; third, Figs. 1 and 2 of the patent in suit. It does not appear that the defendant's controllers appropriate any one of these three forms, but are patentably different from them. If we should give to Bassett's two claims in suit the broad construction, "for any device combined with the standing cable whereby one is positively paid out and the other is taken up," then the defendant's device would be covered by the Bassett claims, and would be an infringement; but we do not think that this broad construction should be given to those two claims of the Bassett patent. The pulleys in the Bassett patent in suit swing through an arc, are operated in an entirely different way, and consist of a different combination from the combination used by the defendant. If we should hold the defendant's machine to infringe the complainant's two claims in suit, we should be suppressing a substantially different combination of elements.

The court must hold that claims 1 and 2 of the patent in suit do not admit of the interpretation contended for by complainant. Bassett's invention must, therefore, be restricted substantially to claims 3 and 4, which claims the defendant has not infringed.

The defendant makes the further defense that the patent in suit, if valid, expired September 26, 1902, with the British patent No. 13,890, and that no injunction can issue, even if the patent in suit has been infringed. In view of the above conclusions, it is not necessary to decide with reference to the British patent and to the contentions touching same.

The decree must be that the bill be dismissed, with costs.

Let the defendant file a draft decree on or before January 24th, dismissing bill, with costs; and the complainant may file corrections thereof on or before February 10th.